UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | |
| ALKEYVIN R. ENNIS | NO. 23-00097-BAJ-EWD |

### RULING AND ORDER

Now before the Court is Defendant's **Motion To Dismiss Indictment (Doc. 23, the "Motion")**, which raised facial and as-applied constitutional challenges to 18 U.S.C. § 922(g)(1). The Government has opposed Defendant's Motion. (Doc. 47). For reasons provided herein, Defendant's Motion will be denied.

### I.  LEGAL STANDARD

Federal Rule of Criminal Procedure 12 allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1).

Here, Defendant pursues "as applied" and facial challenges to § 922(g)(1). "The distinction between as applied and facial challenges is sometimes hazy." *United States v. Perez*, 43 F.4th 437, 443 (5th Cir. 2022) (citation omitted). Generally, however, in an as-applied challenge, the Court assesses whether a law with some permissible uses "is nonetheless unconstitutional as applied to [the defendant's] activity." *Spence v. Washington*, 418 U.S. 405, 414 (1974) (reversing defendant's criminal conviction); *see Street v. New York*, 394 U.S. 576, 594 (1969) (same). By contrast, in a facial challenge, the Court looks more broadly, assessing whether a law

"could never be applied in a valid manner." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798 (1984).

## II. DISCUSSION

Since the filing of Defendant's Motion, the Supreme Court and the U.S. Court of Appeals for the Fifth Circuit have provided additional guidance on the constitutionality of 18 U.S.C. § 922(g)(1). The Court outlines such developments below, then analyzes the impact of this caselaw on Defendant's Motion.

### a. Second Amendment Jurisprudence

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. These twenty-seven words, largely unquestioned since their first utterance, *see* Danny Y. Li, ANTISUBORDINATING THE SECOND AMENDMENT, 132 Yale L.J. 1821, 1846 (2023), have caused considerable consternation among our Nation's courts in the past two decades. The results of this attention have been dramatic. The Second Amendment was reinterpreted to provide an individual right to firearms, *D.C. v. Heller*, 554 U.S. 570, 595 (2008), the Supreme Court declared that the Second Amendment is no longer a so-called "second-class right," *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 70 (2022), and existing constitutional tests for firearm regulations were upended in favor of extended dives into distant history in search of metaphorical ancestors to present-day legislation. *See United States v. Rahimi*, 602 U.S. 680, 697-701 (2024).

Thus, the Court arrives at its current marching orders. When a challenge to firearm legislation is lodged, the Court is to: (1) ascertain whether the "Second Amendment's plain text covers [the] individual's conduct," and (2) if the Second Amendment does cover the relevant conduct, determine whether the Government has satisfied its burden of showing that "the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. 1, 24 (2022). In this process, the Court must not conflate the requirement for a "historical analogue" with a necessity for a "historical twin," or an identical regulation from this Nation's early history. *Rahimi*, 602 U.S. at 701.

The Fifth Circuit has also provided guidance to lower courts for navigating the post-*Bruen* landscape. In *United States v. Diaz*, 116 F.4th 458, 471 (5th Cir. 2024), the Fifth Circuit held § 922(g)(1) constitutional as applied to a defendant possessing prior convictions for car theft, evading arrest and possessing a firearm as a felon. The Fifth Circuit reasoned that since theft was a felony at the time of the Founding, and since felonies at the time of the Founding were punishable by death, then the non-capital punishment of disarmament is also permissible. *Id.* at 469. The Fifth Circuit further noted the existence of other laws in place at the time of the Founding that disarmed "those who menaced others with firearms," "disrupted the 'public order,'" and pursued actions that "'le[d] almost necessarily to actual violence.'" *Id.* at 470-471 (quoting *Rahimi*, 602 U.S. at 697).

3

### b. Defendant's Challenges to § 922(g)(1)

The Court begins with Defendant's facial attack on § 922(g)(1). Such an attack was foreclosed by the Fifth Circuit's decision in *Diaz*. To sustain a facial challenge, "the challenger must establish that no set of circumstances exists under which the statute would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The Fifth Circuit ruled that § 922(g)(1) was constitutional as applied to Diaz, and thereby ruled that § 922(g)(1) is facially constitutional. *Diaz*, 116 F.4th at 472.

Regarding Defendant's as-applied challenge, for present purposes the Government cedes that the first step of the *Bruen* analysis is satisfied as to Defendant, and that Defendant, as a member of "the people," is afforded Second Amendment rights. (Doc. 47 at 5-6). The Government likewise does not contend that the Second Amendment's plain text covers Defendant's conduct. The Court thus proceeds to the second step: whether there is a historical analogue for the application of § 922(g)(1) to Defendant.

The Government contends that there are historical analogues—namely, burglary statutes in place at or around the era of our Founding—that support the application of § 922(g)(1) to Defendant. The Government cites numerous authorities for the proposition that burglary was a common-law felony punishable by death in England, (Doc. 47 at 6-7 (citing William Blackstone, *Commentaries on the Laws of England* 94-98, 228 (1769); Henry John Stephen, *Summary of the Criminal Law* 94 (1840))), and that these laws were carried over into many American colonies. (*Id.*

4

(citing Stuart Banner, *The Death Penalty: An American History* 7 (2002) ("Except for a very brief period in early seventeenth-century Virginia, the early southern colonies did not enact criminal codes as the northern colonies did, but simply used English law."))). Moreover, the Government points the Court to various state statutes from the time of the Founding that explicitly made burglary a capital offense. *See, e.g.*, Laws of the State of New York Passed at the First Meeting of the 11th Session of the Legislature at 664-666 (1788); An Act Against Burglary, 1784 Mass. Acts & Laws January Session Chapter 48; An Act for the Punishment of Burglary and Robbery, 1783 Conn. Acts & Laws, October Session 633; An Act Against Murder, &c. § 5, 1702-1745 N.H. Laws, Province Period, Volume 2, at 313-315.

Based on the authority described *supra* and the Fifth Circuit's ruling in *Diaz* regarding the constitutionality of § 922(g)(1) as applied to a defendant with a conviction for the similar offense of theft, the Court concludes that the Government has carried its burden under step two of the *Bruen* analysis to identify a historical analogue such that § 922(g)(1)'s application to Defendant, who has previously been convicted of a burglary offense, (Doc. 11 at 5), "fits neatly" within our Nation's history and tradition. *See Rahimi*, 602 U.S. at 698. In reaching this decision, the Court adopts and relies on the Fifth Circuit's reasoning in *Diaz* comparing the "why" and "how" of the historical analogues to § 922(g)(1). *See* 116. F.4th at 469. The Fifth Circuit instructed that the purpose behind imposing capital punishment or estate forfeiture for common-law felonies was "deter violence and lawlessness," and that the method

5

of punishment was chosen specifically for its permanence. *Id.* Just so here. As applied to Defendant, § 922(g)(1)'s purpose is to deter future violence and lawlessness, and the method is a serious and irrevocable punishment—permanent disarmament—that is a similarly substantial, albeit more forgiving, discpline than Defendant would have faced in this Nation's early years. The Court therefore concludes that § 922(g)(1) is constitutional as applied to Defendant, and will deny Defendant's Motion.

The Court notes that in issuing this Ruling and Order it joins with at least one of its sister courts in finding § 922(g)(1) constitutional as applied to a defendant with a prior conviction for burglary. *E.g., United States v. Frazier*, No. 24-CR-00093, 2024 WL 5113496, at *2 (W.D. La. Dec. 12, 2024). Further, like its sister courts and the Fifth Circuit, the Court's decision in the above is informed and supported by the presence of the aforementioned "going armed" laws in place at or around the time of the Founding, which prevented those who menaced others with firearms from possessing such firearms on account of the "disrupt[ion] [to] the 'public order'" and the likely violence that would ensue should such persons continue to be armed. *See Diaz*, 116 F.4th at 471 (quoting *Rahimi*, 144 S. Ct. at 1901); *United States v. Robinson*, No. CR 22-253, 2024 WL 4827375, at *7 (E.D. La. Nov. 19, 2024); *Frazier*, 2024 WL 5113496, at *2. Defendant's continued disarmament is justified by his prior conviction for burglary, given that through such conduct he has shown himself to be a risk to cause further disruption to the public order or violence in the future, and the use of "going armed" laws at or around the time of the Founding shows that §

922(g)(1)'s methods—lasting disarmament—have historical precedent. As was the case for the common-law burglary statutes identified by the Government, the "why" and the "how" of the "going armed" statutes discussed by the Government in its Opposition, (Doc. 47 at 8), and by the Supreme Court in *Rahimi*, are analogous to Defendant's disarmament pursuant to § 922(g)(1). *See Frazier*, 2024 WL 5113496, at *2; *Diaz*, 116 F.4th at 471 fn. 5.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Motion (Doc. 23)** be and is hereby **DENIED**.

Baton Rouge, Louisiana, this 27th day of January, 2025

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**